UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA,            )
                                     ) Case No: 1:09-CR-181
      v.                             )
                                     ) Chief Judge Curtis L. Collier
WILLIAM LANDOLT                      )
                                     )

# MEMORANDUM

Before the Court are Defendant William Landolt's ("Defendant") motions to suppress evidence obtained during searches of his residence, which took place on August 21, 2009 and January 13, 2010 (Court File Nos. 558, 577). The Court referred these motions to United States Magistrate Judge William B. Mitchell Carter pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File Nos. 564, 579). Judge Carter held evidentiary hearings on the matters and issued a Report and Recommendation ("R&R") on the motions (Court File No. 1042). Defendant filed timely objections to the R&R (Court File No. 1058). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 1042). Defendant's motions to suppress will be **DENIED** (Court File No. 558, 577).

## I.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must "make a de novo determination of those portions of the [R&R] to which objection is made" and "may accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit

whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## II.  AUGUST 21, 2009 SEARCH

### A.  Relevant Facts

Neither Defendant nor the Government objects to the recitation of the facts as provided in the R&R. Accordingly, the Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this Memorandum.

In August 2009, Detective Chad Johnson ("Detective Johnson") of the Marion County Sheriff's Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives Task Force was investigating methamphetamine trafficking in Marion County. During that time, Detective Johnson received information from a confidential informant ("CI") who advised him of potentially illegal activity engaged in by codefendant Michael Edenfield ("Edenfield") and Defendant. Specifically, the CI indicated to Detective Johnson that Edenfield and his uncle, the defendant in this matter, were involved in the manufacture and distribution of methamphetamine on Defendant's property. However, the CI had never purchased drugs from that location. In addition, the CI told Detective Johnson that according to Edenfield, Defendant had a stolen four-wheel all-terrain vehicle ("four wheeler" or "ATV") for sale. Particularly, the CI stated the four wheeler, which had originally been painted yellow, had been painted black, and it was now in the possession of Defendant. At the time, another agent, who was assisting Detective Johnson, was investigating the recent theft of a yellow Honda ATV.

2

On August 20, 2009, Edenfield contacted the CI. Detective Johnson got on the phone, but he did not identify himself as law enforcement. Instead, he pretended to be a prospective buyer of the ATV. Edenfield told Detective Johnson that his uncle, or Defendant, would sell the ATV for $500. Detective Johnson asked Edenfield if Defendant would trade the four-wheeler for pseudoephedrine. Edenfield responded by saying his uncle does not "shake," meaning Defendant did not cook methamphetamine himself, but he might trade the four-wheeler for firearms. Edenfield also indicated Defendant obtained fifty pounds of marijuana per month from Texas.

On August 21, 2009, Detective Johnson used the CI's phone to send text messages to Edenfield. Detective Johnson attempted to set up a meeting with Edenfield, but Edenfield would only agree to meet with the CI. As a result, the CI was fitted with a recording device, and he was given boxes of pseudoephedrine pills to be traded for the four-wheeler.

Eventually, Detective Johnson and Tennessee Bureau of Investigation Special Agent Mark Delaney followed Edenfield and the CI to Defendant's residence. Other officers, including Detective Gene Hargis ("Detective Hargis"), were also in the van, but they were not visible to those standing outside of the van. When they arrived, Detective Johnson observed Defendant sitting on what he believed was the stolen four-wheeler. As a result, he ordered the other officers, with their guns drawn, to secure Defendant and Edenfield. Edenfield was uncooperative, and he shouted that Defendant had done nothing wrong.

While the officers were securing Defendant and Edenfield, Detective Hargis observed an adult female briefly exit the residence and then go back inside the home. Officers entered the residence to conduct a protective sweep, and they secured the female. They also observed firearms and methamphetamine - manufacturing paraphernalia.

Detective Johnson testified at the February 22, 2011 hearing that although Defendant and

Edenfield were immediately detained, they were not arrested until after the agents had conducted a protective sweep of the house and checked the VIN number of the four-wheeler to confirm that it was in fact stolen (Court File No. 1093, Tr. at 9-11).  He also testified that he knew prior to August 21, 2010 that Defendant had previously been convicted of a felony and that agents had seen firearms in Defendant's house during the investigation of another case (Court File No. 1104, Tr. at 30).

Following the arrest, law enforcement officers prepared an application and affidavit for a search warrant based on what had been observed during the protective sweep.  Defendant filed a motion to suppress any and all evidence seized pursuant to the search warrant on August 21, 2009 (Court File No. 558).

In his motion to suppress, Defendant argued that the evidence found should be suppressed on the basis "law enforcement entered and searched [his residence] without [a] warrant and without consent or exigent circumstances" (Court File No. 558 at 1).  Defendant did not challenge the lawfulness of his detention and subsequent arrest.  However, after the first hearing on the motion to suppress and in the reply brief, Defendant raised, for the first time, the issue of whether the officers had probable cause to arrest Defendant (Court File No. 896).  Consequentially, according to Defendant, the officers also lacked probable cause to obtain the search warrant (*id.*)

**B.      Analysis**

After considering the arguments presented by Defendant and the Government, Magistrate Judge Carter recommends this Court deny Defendant's motion to suppress as to the August 21, 2009 search on the grounds (1) the protective sweep conducted was lawful, (2) officers had at least a reasonable suspicion to detain Defendant, and (3) "the information gathered from the protective sweep and included in the affidavit" was properly used to support the search warrant executed as to  Defendant's residence (*id.* at 9).

4

Defendant, however, objects to the magistrate judge's recommendations for several reasons (Court File No. 1058). First, Defendant argues the R&R erred in "concluding that law enforcement had reasonable suspicion to believe that [Defendant] carried or would possess firearm" (*id.* at 2). Next, Defendant asserts the magistrate judge's conclusion that the officers had at least reasonable suspicion to detain Defendant was erroneous (*id.*). Finally, Defendant argues the officers were not permitted to conduct the protective sweep (*id.*). The Court will address these arguments in the context of whether the officers had probable cause or reasonable suspicion to detain Defendant and whether the protective sweep was lawful. Considering the evidence contained in the record, the Court finds there was reasonable suspicion at the time the protective sweep occurred, and the protective sweep itself was lawful. Accordingly, because the affidavit for the search warrant was based, at least in part, on the evidence viewed by the officers during the protective sweep, the motion to suppress will be **DENIED.**

 1. **Probable Cause/ Reasonable Suspicion**

The Fourth Amendment protects against unreasonable searches and seizures, and an arrest must be supported by probable cause. *United States v. Gross*, 624 F.3d 309, 314 (6th Cir. 2010). "Police have probable cause to arrest a person when they have 'reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense based on the facts and circumstances within the police's knowledge at the moment in question." *Manley v. Paramount's Kings Island*, 299 F. App'x 524, 528 (6th Cir. 2008) (quoting *Peet v. City of Detroit*, 502 F.3d 557, 563-64 (6th Cir. 2007)). On the other hand, an officer may detain an individual during an investigatory stop on less than probable cause. Rather, there may be a reasonable suspicion - that is "under the totality of the circumstances, 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'"

5

*United States v. Townsend*, 330 F.3d 438, 440 (6th Cir. 2003) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "Reasonable suspicion 'requires more than a mere hunch.'" *United States v. Craig*, 306 F. App'x 256, 260 (6th Cir. 2009). To determine whether reasonable suspicion existed, the Court must consider the "totality of the circumstances, considering 'all of the information available to law enforcement officials at the time.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003)).

This Court agrees with the findings in the R&R that the officers had at least a reasonable suspicion Defendant had engaged in the theft of the ATV at the time Defendant was initially detained. For instance, Detective Johnson learned through the CI that Edenfield and Defendant were in possession of a stolen yellow ATV that had been painted black. "It is well-settled that a tip from a reliable informant . . . may justify an [investigative] stop," especially if there is corroborating evidence. *Craig*, 306 F. App'x at 260. Here, Detective Johnson had also been informed by another agent there had been a theft of a yellow Honda ATV from a location close to Defendant's residence. This, coupled with the "contemporaneous observation" of Defendant sitting on a four-wheeler matching the description of the stolen ATV, "provided [the officers] with specific and articulable facts justifying the . . . investigatory stop." *Townsend*, 330 F.3d at 441. However, the Court finds the officer did not have probable cause for an arrest until they verified the VIN number of the ATV.

The magistrate judge also found the officers had a reasonable suspicion to detain Defendant and Edenfield because of the officers's prior knowledge Defendant carried firearms (Court File No. 1042). Indeed, where officers are investigating a defendant for illegal drug activity, it is often not unreasonable for officers to search for firearms due to "the frequency with which drug dealers arm themselves." *United States v. Johnson*, 627 F.3d 578, 583 (6th Cir. 2010) (quoting *United States*

6

*v. Paulette*, 457 F.3d 601, 602 (6th Cir. 2006)). However, here, there was not enough evidence of drug activities for the officers to detain Defendant on this basis. On the other hand, because Edenfield had indicated Defendant would trade the ATV for firearms, there was a legitimate concern for officer safety. *See e.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 309 (6th Cir. 2005) ("During a *Terry* stop, officers may draw their weapons or use handcuffs so long as circumstances warrant the precaution.") (internal citations and quotations omitted); *see also United States v. Norfleet*, 143 F. App'x 645, 650-51 (6th Cir. 2005) ("Whether a detention based upon reasonable suspicion ripens into an unlawful arrest without probable cause depends upon whether the officers' conduct in detaining a defendant and in investigating the suspected crime was reasonable under the circumstances").

### 2. Protective Sweep

After Defendant was detained, but prior to his arrest, the officers conducted a protective sweep of his home (Court File No. 1093, Tr. at 11:7-8). This protective sweep occurred after a female was seen running back inside Defendant's residence. Nonetheless, Defendant argues the officers entered his home without a search warrant or probable cause.

"The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the search officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337 (1990). The Sixth Circuit has broadened this principle by declining to "adopt a bright-line rule that prohibits police officers from conducting a protective sweep of a home" when a defendant is arrested outside the home. *United States v. Colbert*, 76 F.3d 773, 777 (6th Cir. 1996). Finally, in *United States v. Taylor*, the Sixth Circuit held "police may conduct a limited protective sweep to ensure the safety of [the] officers" even where the defendant

7

has not been placed under arrest. 248 F.3d 506, 513 (6th Cir. 2001); *but see United States v. Archibald*, 589 F.3d 289, 301 (6th Cir. 2009) (explaining in this case, however, that the protective sweep did not take place until after (1) the defendant's brother allowed the officers to enter the defendant's apartment, (2) the officers saw marijuana in plain view; and (3) the defendant's brother acted nervously).

Where a protective sweep is "aimed at protecting the arresting officers[,]" . . . the officers must have "articulable facts, which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (internal citations omitted). However, "[t]he facts upon which officers may justify a . . . protective sweep are those facts giving rise to a suspicion of danger from attack by a third party during the arrest, not the dangerousness of the arrested individual." *Colbert*, 76 F.3d at 777. In addition, the sweep should only "extend . . . to a cursory inspection of those spaces where a person may be found." *Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (citing *Buie*, 494 U.S. at 335-36).

Here, Detective Johnson knew Defendant had been previously convicted of a felony (Court File No. 896-2), that Defendant had been in a recent traffic accident and had a firearm in his car at that time, and agents had seen firearms in defendant's house when they had gone to interview Defendant regarding another investigation (*see* Court File Nos. 640, 1042). Nonetheless, with the exception of the fact Defendant may have had firearms in his home, these facts "are not appropriate facts to consider when determining whether the . . . officers reasonably believed that *someone else inside the house* might pose a danger to them." *Colbert*, 76 F.3d 773, 777 (6th Cir. 1996). The only relevant factor is the unknown female, or possibly other individuals, may have had access to those firearms. In addition, the Sixth Circuit has agreed "in some situations, an individual bursting out

8

of a house unexpectedly may well give rise to a concern that a danger lurks inside the home." *Id.* The magistrate judge credited Detective Hargis's testimony that the officers "only looked where a person could be found and the sweep took only four or five minutes" (Court File No. 1042). Given the fact the officers had a reasonable concern the unknown female may have had access to firearms in the home, the protective sweep was lawful. Defendant's motion to suppress will be **DENIED**.

### III.   JANUARY 13, 2010 SEARCH

#### A.   Relevant Facts

Unless otherwise noted, these facts are also taken from the R&R.

On January 13, 2010, Deputy Keith Cox informed Detective Hargis that he and another deputy had been sent on a call early that morning to investigate a woman for disorderly conduct. The woman, who was intoxicated, told the officers her baby had died, and the baby could be found at Defendant's residence (Court File No. 1104, at Tr. 57). As a result, the officers then went to Defendant's residence to investigate. Once there, they saw a gate across Defendant's driveway which had two signs posted on it. One of the signs said "No Trespassing" and the other sign said, "We don't call 911" (*id.* at 65-66). The two officers parked the patrol car at the gate and walked approximately 100 yards to Defendant's residence. As they approached the house, they heard someone running through the woods. Then Officer Cox saw a mason jar with a bi-level liquid, plastic tubing, syringes and a cold pack outside on the porch in front of Defendant's front door. He could also smell an overwhelming odor associated with methamphetamine manufacturing.

Officer Cox then knocked on Defendant's door in order to speak with Defendant about the woman's baby. Defendant told the officer the baby was alive and in state custody. When Officer Cox asked for permission to search inside Defendant's residence, Defendant refused to consent.

9

Officer Cox next informed Defendant he heard someone running around on Defendant's property. When asked if Defendant wanted the officers to look around on the property, Officer Cox testified Defendant consented to that type of search.

While looking outside of Defendant's residence, the officers saw items indicative of methamphetamine manufacturing in plain view outside of the home. As a result, Defendant was placed under arrest. Defendant filed a motion to suppress evidence obtained during the search of his property on January 13, 2010 on the grounds "law enforcement entered and search the [curtilage] of the property without [a] warrant and without consent or exigent circumstances" (Court File No. 577 at 1).

**B.    Analysis**

The magistrate judge recommends the Court deny Defendant's motion to dismiss because (1) the officers did not violate Defendant's Fourth Amendment rights by walking past the "No Trespassing" sign and knocking on his door and (2) the officers were responding to an emergency situation.

In contrast, Defendant objects on the grounds (1) Officer Cox entered on to Defendant's property despite the fact the gate was locked and there was a "No Trespassing"; (2) there was no lawful basis for Officer Cox to step on to Defendant's porch and knock on his front door with the intent to search his property; (3) Officer Cox was only responding to a "nuisance call"; and (4) even if Officer Cox was responding to a welfare check, there still had to have been an "objective reasonable basis" for the intrusion (Court File No. 1058).

Defendant first argues the officers trespassed by entering his property although there was a "No Trespassing" sign posted on the gate at the driveway. Indeed, "the Fourth Amendment protects the home and its curtilage, the 'land immediately surrounding and associated with the home.'"

*Johnson v. Weaver*, 248 F. App'x 694, 696 (6th Cir. 2007) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). However, this protection does not extend to "neighboring open fields." *Id.* "Because the driveway constitutes an 'open field,' [Defendant] holds no reasonable privacy expectation in it, and his efforts to shield that area from any manner of unwelcome guest prove inconsequential." *Id.* Therefore, as stated in the R&R, the officers' "decision to walk past the gate down the driveway did not constitute a 'search' within the meaning of the Fourth Amendment'" (Court File No. 1042 at 16).

However, once Office Cox reached the porch of Defendant's home, he was on the curtilage of Defendant's residence. Still, an officer is generally "permitted to go to the front door [of a defendant's home] for purposes of speaking with the occupants or asking for consent to search the premises." *Hardesty v. Hamburg Tp.*, 461 F.3d 646, 653 (6th Cir. 2006). This Court agrees with the magistrate judge that the "limited intrusion" of Officer Cox knocking on Defendant's door did not constitute a Fourth Amendment search.

In the alternative, even if Fourth Amendment protections were triggered, it is clear from the record that Officer Cox knocked on Defendant's door in order to respond to an emergency situation. "Law enforcement officers may enter a home [or its curtilage] without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *United States v. Parton*, No. 3:09-CR-134, 2010 WL 3025212, at *6 (E.D. Tenn. July 2, 2010) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). Here, the officers were told by a visibly upset, albeit intoxicated, woman that her baby had died at Defendant's home. Under these circumstances, it was objectively reasonable for the officers to step on to Defendant's porch and knock on his door.

Although Defendant does not specifically object to the search around his home, the Court

finds it was appropriate for the magistrate judge to credit the testimonies of the officers who stated Defendant gave consent for them to search his property. In considering testimony related to a motion to suppress, 'the judge should receive the evidence in question and give it such weight as his judgment and experience counsel.'" *United States v. Matlock*, 415 U.S. 164, 174 (1994). Accordingly, Defendant's motion to suppress will be **DENIED**.

**An Order shall enter.**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**